Good morning, Your Honors. Actually, my name is William Hopkins and I represent the plaintiffs in this case. Could you speak a little more loudly, please? I'm sorry, William Hopkins. Thank you very much. Your Honors, I think that one of the most critical things, without just rehashing all of the facts, one of the most critical things that happened here was at the second motion to dismiss hearing, the Court basically treated it as a summary judgment expecting us to produce evidence that supported these claims where the case had been stayed for six months. There were never any initial disclosures. We were never allowed to conduct discovery. We were never allowed to produce that evidence that we had been pointing to and that was referenced in the complaint that would have shown and supported these allegations, such as the testimony that we would have been able to get from the shop inspector supervisors who would have shown that, yes, in fact, there were temporary assignments that shop inspectors who even had not had taken the classification and examination and weren't certified as plaintiffs were, in fact, still retained and placed in positions and that there were actual postings that the union had not notified them of during this time period. And we were left at the point at the second motion to dismiss where the Court basically states that, look, you have no evidence to support this stuff and we're dismissing this case after the case had been stayed for six months and we haven't even proceeded to the discovery process. So that's one of the main areas that we wanted to point out there. I'd like to reserve my time to answer any questions that the Court may have, if there are any particular issues. What is your response to the jurisdictional argument that the federal court has no jurisdiction because of the mandatory arbitration procedures, and if that's the case, then even if you have the facts in your favor, the Court would have been correct to dismiss? Well, the grievance was initiated back in July of 2003. By the time that the court had filed the complaint, which was in February of 2005, we still had not reached the arbitration part. The plaintiffs, the shop inspectors had still not reached the arbitration. Actually, arbitration proceedings are supposed to be resolved under the contract within the six-month period. These things should have resolved back in the earlier part of 2004. Well, that has to do with speed, not jurisdiction. The question is, this is an interpretation of a collecting bargaining agreement, and because of that, the court doesn't have jurisdiction. It's supposed to go to arbitration. Now, we'll hope that's done promptly. Maybe it wasn't so prompt in this case. But that isn't the question. The question is whether the district court has any jurisdiction. I think that's the question you have to answer. I appreciate that, sir. And what I was trying to point out is that we were bringing an exception to these grievances. They had missed timelines. They hadn't turned over file information. They had actually began by placing one name on the grievance, which was Norman Liu. They allowed that to drop. They never notified the grievance that they had allowed that to drop. In fact, they stated that they were continuing to process the grievance. Okay. The exception to what you're saying, as I understand your argument, there is an exception of going to the district court if there's arbitrary or discriminatory or bad faith of the union. Is that what you're charging? Yes, sir. Yes, we are. I think that's pretty hard to prove. What's the actual evidence? Are you thinking of arbitrary, discriminatory, or bad faith? Well, sir, I'm not pointing to one specific. Well, you have to get one of those to get jurisdiction. So you might as well choose now because I'll have to choose later. Door number one, door number two, door number three. So we're taking all three doors. Okay. All three. Where's the evidence the union was arbitrary, discriminatory, and had acted in bad faith? Well, sir, and that brings us back to the question, which we brought in the allegations in the complaint. We said, look, the union, Joe Prisco, the union president, basically told them that your grievance doesn't mean jack. I can just turn here and sit on it. We have other grievances that we're worried about. We don't want to piss the Labor Relations Office off. And there were numerous statements that were technical legal term. Piss them off. I missed that one in black and white. I don't know the legal term. What you're saying is that the union made a calculated decision that there were other issues they wanted to deal with at that time, and they put you at the bottom of the line. Assuming the union can't do everything at once, what does it show that is arbitrary, discriminatory, or bad faith that they took other issues before your client's issues? Well, sir, the fact that one of the facts that we pointed out to is that the union did, in fact, state that they had other grievances that they wanted to deal with, which was one of the issues. The other issue that they brought to their attention, they said, look, you've got shop inspectors that are being placed in temporary positions and that still are retaining their positions and that haven't even passed the certification examination for the shop inspector position. And you have Joe Prisco, whose responsive communication to Mr. Vartanian in particular is very hostile, and he's basically telling him, we don't like your claim. Well, but isn't it settled that the fact that the union may not think the claims of that ballot or that they, I mean, I'm not sure, in terms of just delay by itself, ultimately here, counsel were provided, they moved forward. Isn't it pretty clear that the law is that the mere fact that the union doesn't particularly like the claims or whatever, something along those lines, don't reach that threshold showing? Well, it was more than just not particularly liking their claim. In fact, the union at first, the AMFET first told them that these claims weren't even plausible. That wasn't even how they viewed the contract. And that's why it produced the declaration of Ray Perry, who was one of the authors under the IOM who had created that contract, who said, no, that's not the improper way to interpret it. And then after almost a year of plaintiffs being left to beg the union to do something about it, the union takes it and says, okay, well, now we agree with it. But still, they're still delaying this. And my point was to the district court is I said, look, we've got evidence here. We've got shop inspectors, people who are willing to be deposed, and they're going to give testimony under oath. They don't want to step out and give declarations. We've got shop inspector supervisors. We've got other people that we can bring forth in discovery and provide this evidence that the court is asking us for, but we're never even allowed to reach that stage. And the court basically states, well, we've stayed the case. We've suspended the case. You can't do anything. And we never get a chance to go to discovery to prove those allegations, to set forth the evidence that would show in the record that we do have evidence to support these allegations here. It's basically  Kagan. Did the union eventually take a client's claim and proceed with him? And that brings the other question, that the union eventually. Is that a yes or no? Yes, sir. The answer is yes. And did they provide an attorney for your clients? The union had provided its own representative for our clients. So they did provide the attorney representative. They provided an attorney representative. I'm not sure if it was an attorney, but they did provide representation. And as I recall, there was no complaint about the quality of the representation per se. No. Actually, sir, that's not correct. The problem was that there were postings that the grievance were not made aware of throughout that time, and they continued to complain about that. They said, look, you've got openings that are continuing to be posted, and we're not being made aware of it. Even though we're on layoff status and we have a right, according to our argument, to return to that premium position, you're not notifying us of these postings. And that's part of our grievance. And that part of the grievance was never addressed in the arbitration. And the court is stating that, okay, well, you were given time and opportunity to present those in the arbitration, and our clients are saying, no, AMFA determined what the scope of the claims would be in the arbitration. We had to follow AMFA. AMFA said these are the claims that we're going to process, and those are the claims that are going to be arbitrated, and nothing else is going to be covered. And they weren't given an opportunity to pursue those other claims. So I'm trying to answer your question here. You have about a minute and a half if you'd like to save it for rebuttal. I would, please. Thank you. Good morning, and may it please the Court. Joshua Deidelberg appearing on behalf of United. I'd like to take about two minutes from my argument and then turn over the balance of our time to the Unions Council. It's difficult to see what's left of this case for United. As the district court correctly noted in dismissing United from the case, the Railway Labor Act preempts and divests federal judicial involvement in the resolution of labor disputes involving the interpretation of a collective bargaining agreement. And these so-called minor disputes are left to the exclusive grievance and arbitration mechanism provided for in the party's collective bargaining agreement. So accordingly, consistent with the district court's order, an arbitration proceeding was held with respect to the appellant's grievances before the System Board of Adjustment, and the SBA panel found that United did not, in fact, breach the collective bargaining agreement as originally grieved by the appellants. Now, the appellants have raised no argument, either before this court or below, that there was anything amiss with that proceeding. Below, they didn't seek to move for reconsideration, for example, of the district court's dismissal order because of anything that AMFA did in that proceeding. They didn't independently try to vacate the award. They didn't file a separate complaint alleging that AMFA's conduct reached its duty of fair representation with respect to its handling of that proceeding. Before this court, they've made no argument in their brief and no allegation that the district court committed error in allowing the dispute to go to arbitration or that, again, that there was anything amiss or any breach of the duty of fair representation by AMFA in that proceeding. The district court recognized that the only way that the appellants have a viable claim in federal court is if going to arbitration would be futile, which is a highly limited exception to the preemption standard and one with a very robust standard. And they simply made no argument whatsoever that the conduct of that proceeding was futile or arbitrary, discriminatory, or in bad faith. So seemingly, the RLA leaves nothing for this court to do other than to dismiss the appeal against united and we ask that it do so. Does the court have any questions? You want us to dismiss the appeal or affirm? Well, affirm, affirm, affirm the appeal dismissing the claim against united. I'm sorry. I have this phone, Judge. Thank you. Thank you. We'll hear from your other colleague here. May it please the Court. Thank you, Your Honor. Nicholas Gronath representing Appellee AMFA Local 9. Good morning, Your Honors. The core of this case was always a jurisdictional question. I would submit to the Court that this case is as clear as it was to two district judges that reviewed it. There was an open grievance. The process was available. The appellant and plaintiffs sued, notwithstanding the fact that they had not exhausted. Both reviewing judges determined that the process was open. There was no ---- We understand that. That's easily read from your brief. The issue, it seems to me, is whether or not there is sufficient evidence that your opposition was correct, that there is arbitrariness or discrimination or bad faith. And there was a substantial amount of time, the record shows, before that claim came up. So maybe you could tell us what does the record actually show as to whether or not there was arbitrary, discriminatory or bad faith exercised by the union? Your Honor, the record shows that there was certainly no discrimination, that there was certainly no arbitrary conduct, and there was nothing in bad faith. In fact, I would submit that the union bent over backwards for a grievance that it had earlier determined had no merit whatsoever, which, in fact, did have no merit, as was later revealed in the arbitration. So what do I understand you correctly, the union made a value judgment as to how meritorious the claim was and, based upon that, took certain actions? That's correct. But the point being, Your Honor, is that the union processed the grievance all the way through, notwithstanding the fact that it determined in its own value judgment, in its own assessment, that the grievance probably lacked merit. And, in fact, it was determined by the proper forum, a system board of arbitration established under the RLA, that it did lack jurisdiction for exactly the reason that it was denied, for exactly the analysis that the union provided early on. I'd like to ---- I'd like to go back to counsel's argument that there were aspects of the grievance that were ignored completely and never processed. I really think that that misstates the facts, and with all due respect, I think counsel's rather cavalier with the record before this Court and the record that the district court determined. There was in no respect any misstep here, except for one, and that was there was one time element that was missed that was fully corrected on the union's initiative. There was no damage. The grievance that was actually taken forward was identical in all respects to the original grievance, and the appellants were provided with experienced labor counsel, not counsel involved in this litigation. They were treated in all respects to and all access to that counsel. They were allowed to input on their argument. They were allowed to input on everything else. There was a couple of statements that have to be ---- But are they saying at this point that, first of all, you had a combination of the union just basically making clear, just felt the claimants had no merits, second, the union dragging its feet, at least according to Appellant, unfairly, and then not posting and not following up even when they had counsel. And I agree with you. I don't think there was much of a dispute that counsel didn't handle it or representatives didn't handle it properly. But is there ---- are there any circumstances where those facts alone, if egregious enough, would taint the proceeding? Absolutely not, Your Honor. I mean, the only ---- the only fact that the plaintiffs ever had that even caused any concern at all and does not rise to the standard of DFR was the one timeline that was missed. And there's no dispute and never has been that was fully remedied. And these folks always, their grievance, their issue that they defined was fully ---- I'm sorry. ---- that they defined. I disagree with counsel's assertion that somehow the union imposed the issues. The issues is the same as any arbitration before an RLA board. It's defined by the grievance and the contract. What is your response to the argument that further discovery should have been allowed to uncover further evidence that there was arbitrariness, bad faith or discrimination? Your Honor, it's not relevant to the jurisdictional issue here. There was an open grievance. There was no proof of futility. The road was wide open. And the district court immediately recognized that and said we'll go on to arbitration and that's exactly what happened. The process was opened up to plaintiffs, opened up to counsel. What do you want? What evidence do you want? What testimony do you want? They had full access to it. They didn't question it. They had all the process in the world. And there was no move. The plaintiffs' appellants never moved under 56F. And they had full access to the process. I don't know what discovery would have changed. Would they have discovered that the process wasn't opened? There wasn't any dispute about that. Let me ask you one other question. There was a tag along that the district court said that he was going to give fees and costs. Have they been awarded? No, they have not. I double-checked the docket and the docket is closed. The last action of the court was to cancel the hearing and say that it was going to make a ruling on papers. There never was a ruling, Your Honor. It's a little confusing to me just what the district court plans to award if it does award. It doesn't say fees and costs pursuant to Rule 54D. It just says fees and costs. And I'm ñ has there any ñ I don't know where you would ever get attorney's fees available to you under that order. But I just don't ñ I don't want to see it up here again. And I'm sure you don't either. I certainly don't. I've been frustrated from the beginning with this case because there was process open and the complaint that these folks had originally, which was really a very simple seniority question, has been fully satisfied in two forms, actually. And the answer is not surprising here. I don't know why ñ I don't know what was in the mind of the district court when they awarded those fees. I will tell the ñ I will tell ñ Let me ask you this. You did put in ñ did you not put in a claim for 49,000 in fees? Is it still your position that you're entitled to that? No. Okay. So if the ñ so what you are ñ you are agreeing at this point that if the court ever reaches ñ the district court reaches that, it would not be for the attorney's fees per se other than the minimal fees that would be ñ might be awarded under the rule? The position that I just indicated is not a secret to counsel. And I will state on the record the same right now. Okay. Thank you, counsel. Thank you, Your Honor. Mr. Hopkins, you have about a minute and a half left for rebuttal. Your Honor, I just wanted to point something out. They pointed out that the grievance defined their claims. This grievance that was ñ that reached arbitration was for Luis Bill, and it was one that he hadn't signed, and it was one where he didn't even know that they had pursued this grievance because they had dropped the previous grievance that the AMFA had brought on behalf of Norman Liu speaking for the other shop inspectors. So it was a grievance that AMFA has defined the whole time. They have pursued it under their own parameters. And when we reached the point of the district court with Judge Fern Smith, she stated, well, I do understand your position that you were forced to file this action to get the union to act. And she also stated in her order, although there is no present evidence that the based on the past circumstances and the union's failure to timely process the grievance, the court finds the question of futility with respect to the union unresolved. She then stayed the action. There was nothing else we could do to develop any evidence. And the next time we get to a hearing, Judge Patel simply dismisses the action because she states, well, an arbitration has been held, there's no further evidence, although we haven't been invited ñ allowed to do any discovery, no initial disclosures, and she dismisses the case. With respect to the attorney's fees, the court, to my understanding, has not reached a decision on that. But they have requested that. They have not withdrawn those requests. And we argue that the attorney's fees were not proper there. So we respectfully ask the court to review that as well. Thank you. Thank you, counsel. The case just started is submitted.
judges: Wallace, Graber, Schiavelli